# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

***********************
CAPE ANN MARINA, CORP.
Plaintiff,

v.                                              Civil Action No.

WATSON INSURANCE AGENCY, INC.,
Defendant

***************************

## PLAINTIFF'S COMPLAINT AND JURY TRIAL DEMAND

### I. PARTIES

1. The plaintiff, Cape Ann Marina Corp., (hereinafter "CAMC") is a Massachusetts corporation with a principle place of business at 75 Essex Avenue, Gloucester, MA, 01930.

2. The defendant, Watson Insurance Agency, Inc., (hereinafter, "Watson") is a New Hampshire corporation with a principle place of business at 50 S. Main Street, Manchester, NH 03102.

### II. JURISDICTION

3. The court has subject matter jurisdiction over this controversy, based upon diversity of citizenship, 28 U.S.C. 1332.

4. Watson, at all times relevant hereto, was engaged in commerce within the Commonwealth of Massachusetts.

### III. FACTS

5. At all times relevant hereto, CAMC is a corporation engaged in the operation of a marina and hotel located in Gloucester, MA.

6. At all times relevant hereto, Watson is an insurance agency in the business of procuring insurance on behalf of clients.

7. At all times relevant hereto, Watson held itself out as professional specializing in the procurement of commercial insurance for both hotel and marina operations.

8. Additionally, Watson represented to the plaintiffs, and to the world in general, that it would, as part of its services, provide expert assessment, analysis, advice, and recommendation to its clients with respect to the scope and nature of the particular client's insurance needs.

9. Watson had been, as of June 2004, the agent, relative to the procurement of insurance, for CAMC, for at least 15 years.

10. In June of 2004, the plaintiff entered into a contract with the defendant, wherein the defendant was charged with assessing the plaintiff's insurance needs, and obtaining the necessary insurance in exchange for the payment of commissions.

11. At that time, as was the case for earlier years, Watson undertook an analysis of CAMC's insurance needs, and advised CAMC as to the types and levels of coverage deemed necessary.

12. After such evaluation, CAMC adhered to all of Watson's recommendations with respect to the types, and level of coverages, to be secured.

13. On the advice and direction of Watson, CAMC obtained blanket property coverage for CAMC, inclusive of the marina and hotel, through ACE/USA Insurance Company.

14. The subject policy had a 100% co-insurance clause.

15. On 2/21/05, the Cape Ann Marina hotel, owned and operated by CAMC, suffered a catastrophic collapse in the hotel area.

16. After the loss, the plaintiff learned, for the first time, of the existence of the co-insurance clause, and its implications vis a vis its coverage for the loss.

17. CAMC commenced negotiations with ACE/USA with respect to the loss, eventually arriving at a compromise loss figure of $2,094,438.00.

18. Again, after extensive negotiation and compromise, it was agreed between CAMC and ACE/USA that the minimum amount of coverage, for the purposes of applying the co-insurance agreement, was $5,789,832.00.

19. The subject property was vastly under insured, triggering the application of the co-insurance provision, and substantially reducing the recovery due CAMC, under the terms of its policy with ACE/USA.

20. CAMC retained counsel, Orlando & Associates, of Gloucester, MA, to negotiate the disputed claim with ACE/USA, thereby causing CAMC to incur substantial attorney's fees.

21. Eventually, after extensive negotiation, and ~~on the eve of the filing of a declaratory~~ judgment action in the Federal Court, the dispute between CAMC and ACE/USA was resolved by virtue of mutual compromise.

### IV. Count I: Negligence

22. The plaintiff restates and incorporates by reference paragraphs 1-21 of the plaintiff's Complaint, as if specifically set forth herein.

23. At the time of the placement of the 2004-2005 policy, and for many years prior thereto, there existed an expanded agency agreement, arrangement, or relationship between Watson and CAMC.

24. By virtue of said expanded agency agreement, Watson had a duty to use due care in assessing, analyzing, advising, and recommending to CAMC regarding the types and levels of insurance needed for its marina/hotel operation.

25. The defendant failed to utilize due care in this regard.

26. As a direct and proximate result of the defendant's breach of its duty to use due care in this regard, the plaintiff was damaged.

WHEREFORE, the plaintiff demands judgment against the defendant, Watson, for all damages sustained, as well as costs and attorney's fees.

### V. Count II: Breach of Contract

27. The plaintiff restates and incorporates by reference paragraphs 1-21 of the plaintiff's Complaint, as if specifically set forth herein.

28. In 2004, the plaintiff and the defendant entered into a contract whereby the defendant would assess, analyze, and advise the plaintiff with respect to the plaintiff's insurance needs, and thereafter procure the necessary insurance on behalf of the plaintiff, in exchange for consideration paid to it by the plaintiff.

29. An implied term of said contract was that the defendant would utilize due care with respect to its obligations under the contract and would not perform said obligations in an negligent manner.

30. The defendant failed to use due care in carrying out its obligations under the contract, thereby breaching the contract.

31. As a result of the defendant's breach, the plaintiff was damaged.

WHEREFORE, the plaintiff demands judgment against the defendant, Watson, for all damages sustained, as well as costs and attorney's fees.

Plaintiff,
By its attorneys,

JOSEPH M. ORLANDO, ESQ.
BBO #380215
BRIAN S. MCCORMICK, ESQ.
BBO #550533
Orlando & Associates
1 Western Ave.
Gloucester, MA 01930
978-283-8100

Date: 10/4/07